REINHARDT, Circuit Judge,
concurring:
I join fully in Judge M. Smith’s opinion affirming the district judge’s dismissal of Plaintiffs’ complaint. As the opinion states, Plaintiffs are not entitled to recapture visas from past years, and, as to the rest of their claims, Plaintiffs have failed to adequately plead any action that any Defendant was required, but failed, to take. I write separately only to note the importance of the problem that Plaintiffs identify, and to suggest that, despite our affir-mance of the district court’s dismissal of Plaintiffs’ complaint, our opinion should not be viewed as approving of the misallo-cation of immigrant visas that Plaintiffs describe.
Plaintiffs have identified a significant problem with this country’s system of issuing immigrant visas. In 2008 and 2009, according to Plaintiffs, our nation’s immigration authorities wrongfully distributed to citizens of other nations over 40% of the available employment-based, third preference (“EB-3”) immigrant visas that, under the applicable statute, should have been made available to individuals from mainland China. These visas — numbering over 2,300 — would have permitted applicants from China to live and work in this country as legal permanent residents and to start on a path to United States citizenship at the time intended by Congress. Instead, the government erroneously gave these visas to individuals from other countries, many of whom had been waiting’ far less time for the same type of visa than their Chinese counterparts.
The system that produced this error— and the root cause of the problem — is admittedly complex. The employment-based *1005 immigrant visa system has numerous steps, requiring coordination between the Departments of Labor, State, and Homeland Security. The problem that Plaintiffs identify appears to stem, at least in part, from the failure of U.S. Citizenship and Immigration Services (USCIS), a part of the Department of Homeland Security, to communicate information to the State Department’s Visa Office regarding the number of pending applications for EB-3 visas. USCIS’s failure to communicate this information to the Visa Office does not appear to have been intentional; rather, it apparently was the result of its attempts to streamline the processing of applications for adjustment of status. Nevertheless, without accurate information from USCIS regarding the number of pending applicants for EB-3 visas from each country, the Visa Office was unable — for at least two years, and likely for much longer — to ensure that the correct number of immigrant visas were made available to individuals from each country. Plaintiffs, and thousands of others like them, were prejudiced as a result, in that they were required to wait far longer for their visas than other individuals who applied at the same time.
This is not the way that the immigrant visas system was intended to function. The 1965 law that established the system intended beyond doubt that the visas would be issued on a “first-come, first-served” basis. See S.Rep. No. 89-748 (1965), reprinted in 1965 U.S.C.C.A.N. 3328, 3332. Congress believed that such a system was the only fair way to allocate immigrant visas given the substantial numbers of individuals seeking to immigrate to the United States, see id., and it created a comprehensive statutory scheme to carry out that goal, see 8 U.S.C. § 1151 et seq. Defendants’ actions — whether or not they violate the letter of that statutory scheme, and whether or not they are redressable— are difficult to reconcile with the basic principle upon which that system was created.[1]
The misalloeation of visas that Plaintiffs complain of is not, however, the result of the violation of any specific duty, imposed on any specific defendant by Congress and identified as such in the Complaint. It appears, nevertheless, that the failure to effectuate the purpose of the statutory scheme could have been entirely avoided had the Defendants taken more seriously their joint responsibility to ensure the proper functioning of the immigrant visa system. Congress, for example, specifically required the Visa Office to keep a waiting list of “applicants for [immigrant] visas” — a necessary component for the immigrant visa system to function as Congress intended. 8 U.S.C. § 1153(e)(3).[2] *1006 It is clear, moreover, from Plaintiffs’ largely uncontested allegations, that the Visa Office’s waiting list was inaccurate, because the Visa Office lacked adequate information from USCIS. Had the Visa Office simply asked USCIS for the necessary information regarding pending applications for immigrant visas — or, conversely, had USCIS simply provided to the Visa Office the full information that office required to create an accurate waiting list — the misallocation of visas that Plaintiffs complain of likely could have been averted.
Our decision largely rests on the conclusion that Plaintiffs failed to identify in their complaint any legal obligation that any particular Defendant was not fulfilling, and thus failed to state a cause of action. It is not entirely surprising, that Plaintiffs failed to do so, given the byzantine nature of the immigrant visa system. Plaintiffs likely found it extremely difficult at the outset of this lawsuit — and despite some efforts on their part before the motion to dismiss was granted — to identify with specificity what errors which agency was making, how or why these errors were causing visas to be misallocated, or, specifically, what legal obligations, if any, USCIS, the State Department, or either or both were failing to fulfill.[3] Equally significant, on appeal, Plaintiffs failed to contend that the dismissal with prejudice was improper.
Nevertheless, what is clear is that during 2008 and 2009 (and likely beyond), as a result of either errors or oversights on the part of the responsible agencies, the immigrant visa system did not function in a manner consistent with Congress’s intent in creating it. Although we dismiss Plaintiffs’ complaint, our decision should not be read as condoning that unfortunate result.

. The "first-come, first-served” principle is, admittedly, limited to some extent by limits on the number of individuals from each country who may receive immigrant visas each year. See 8 U.S.C. § 1152(a)(2). The existence of such per-country limits, however, is incidental to the problems that Plaintiffs identify. Plaintiffs allege that, despite overwhelming demand for immigrant visas from Chinese individuals, the number of visas allocated to individuals from China has been far less than even the per-country limit — a result that is irreconcilable even with the minor deviations from a pure "first-come, first-served” system that Congress has accepted.

. Without an accurate waiting list, the Visa Office is unable to adequately fulfill its other statutory obligations, including Congress's requirements that (a) its estimates of the number of immigrant visas to make available be "reasonable,” see 8 U.S.C. § 1153(g); (b) immigrant visas be issued in the order that applications were filed, see 8 U.S.C. § 1153(e)(1); (c) the number of immigrant visas issued each year not exceed the limit available for each category of visa or country, see 8 U.S.C. §§ 1151(a)(2), 1151(d), 1153(b); and (d) the number of immigrant visas issued each quarter not exceed 27% of the yearly total, see 8 U.S.C. § 1151(a)(2).

. As our opinion states, Plaintiffs raised for the first time on appeal a claim that Defendants' actions violated 8 C.F.R. § 245.1(g)(1); see also 8 U.S.C. § 1255(a) (USCIS may adjust the status of a non-citizen only if "an immigrant visa is immediately available to him at the time his application [for adjustment of status] is filed”).